**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

GEORGE P. ZOIS,                                  :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.                   :

Case No. 3:08-cv-330

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") terminating Plaintiff's Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole. Plaintiff is acting *pro se.*[1]

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

---

[1] Although Plaintiff is acting *pro se* before this Court, he was represented by counsel at the hearing and Appeals Council levels of the administrative proceedings. *See,* Tr. 337; 330-34.

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

A recipient of disability bears a continuing burden to show that he or she is disabled. *See, Mathews v. Eldridge,* 324 U.S. 319, 336 (1976); *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 n.1 (6th Cir, 1994). A recipient of disability benefits will be found to be no longer disabled if there has been medical improvement in his or her impairments since the time of the most recent favorable determination, other than improvement that is not related to the recipient's ability to work and the recipient is not able to engage in substantial gainful activity. *See,* 42 U.S.C. §423(f). In determining whether a recipient's entitlement to disability benefits has ended, the Commissioner uses an eight-step sequential evaluation process. *See,* 20 C.F.R. §404.1594(f)(1)-(8); *see also, Johnson v. Secretary of Health and Human Services,* 948 F.2d 989, 991 (6th Cir. 1991).

That the claimant currently not be engaged in "substantial gainful activity," is the first step in the sequential evaluation process for determining that disability has ended. *See, Id.* The other steps can summarized as follows: (2) if not engaged in substantial gainful employment, does the recipient have an impairment which would result in a new finding of disability? (if yes, the disability is found to be continuing.); (3) if no, has there been medical improvement in the condition which was originally found to be disabling? (if no, the disability is usually found to continue); (4) if there has been medical improvement, is it related to the ability of the recipient to do work? (if no, disability is probably found to be continuing, subject to step 5); (5) this step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4; (6) if medical improvement is shown, is the recipient's current impairment nonetheless severe? (if no, disability ceases); (7) if the current impairment is severe, can the recipient do the work which he did before determined to be disabled? (if yes, the disability ceases); (8) if the recipient cannot do the work done in the past, can the recipient do other work?

Plaintiff filed an application for SSD on June 25, 1997, alleging disability due to chronic kidney failure. *See,* Tr. 18. Plaintiff's application was granted in a decision dated July 21, 1997. *Id.* Subsequently, a continuing disability review was conducted and based on the results of that evaluation, a determination was made that Plaintiff's disability had ceased on March 1, 2005. *Id.* Accordingly, Plaintiff's benefit entitlement termination at the end of May, 2005. *Id.*

Plaintiff appealed the termination determination and his appeal was denied initially and on reconsideration. (Tr. 59-60; 61-63). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 337-66), who determined that Plaintiff is not disabled. (Tr. 15-32). The

Appeals Council denied Plaintiff's request for review, (Tr. 6-10), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff's disability ceased, Judge Padilla found that Plaintiff has residuals of kidney and pancreatic transplantation surgery and degenerative disc disease in his cervical and lumbar spine which have adversely affected his ability to engage in basic work activity at all times since the comparison point decision date and which are therefore "severe" for purposes of the Social Security Act. (Tr. 30, finding 2). Judge Padilla also found that Plaintiff does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, finding 3. Judge Padilla found further that there has been medical improvement in Plaintiff's medical condition for which he was found disabled since July 21, 1997, and that the improvement is related to Plaintiff's ability to work. *Id.*, findings 4, 5. Judge Padilla also found that since March 1, 2005, Plaintiff has been capable of performing a limited range of light work. (Tr. 31, findings 7, 9). Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* findings 13, 14. Judge Padilla concluded that Plaintiff's disability ceased on March 1, 2005, and his entitlement to a period of disability and SSD ended effective May 31, 2005. *Id.,* finding 15; Tr. 32.

Plaintiff underwent a kidney and pancreas transplantation at the Ohio State University Hospital in February, 1999. (Tr. 191-92). Initially, Plaintiff had problems with organ rejection, but that was reversed with changes in his medications. (Tr. 193-94). Plaintiff continued to receive post-transplant care at the Ohio State University Hospital Post-Transplant facility through at least March, 2006. (Tr. 197-210; 217-30). During that period, specifically in February, 2001, Plaintiff underwent

4

a resection of a ureteral stricture and redo of ureter to the bladder anastomosis. *Id.* Plaintiff tolerated the procedure and recovered. *Id.* Over time, it was noted that Plaintiff had "excellent kidney/pancreas function", continued to do "quite well", and that he should increase his activities. *Id.*

Dr. Gupta has been Plaintiff's treating renal physician at least during the period May 12, 2005, to January 25, 2007. (Tr. 160-65; 260; 329). During that period of time, Dr. Gupta has noted that Plaintiff was status post pancreas-kidney transplant with stable function of both his pancreas and kidney, that he had chronic diarrhea which was off and on, and that Plaintiff had excellent allograft function. *Id.* On September 26, 2006, Dr. Gupta noted that Plaintiff reported that his "hypertension, diarrhea, left extremity pain, etc." had resolved. *Id.*

The record contains a copy of treating physician Dr. Keyes' office notes dated March 24, 2006, through January 19, 2007. (Tr. 186-90; 318-27). Those notes reflect that Dr. Keyes provided general medical care for Plaintiff for various complaints including diarrhea, rotator cuff impairment, and neck pain, *Id.*

Plaintiff consulted with orthopedist Dr. Fisher on May 9, 2006, at which time Dr. Fisher reported that Plaintiff had positive Spurling's on the left, decreased biceps strength on the left, decreased triceps strength on the left, some atrophy in the left biceps as compared to the right, tenderness up over the trapezius with palpable trigger points, and negative straight leg raises. (Tr. 167). Dr. Fisher also reported that Plaintiff's biceps reflexes were a little hyperactive on the left, triceps and brachial radialis were difficult to elicit, and that his neck was not tender anteriorly or midline. *Id.* A June 2, 2006, MR of Plaintiff's cervical spine revealed a large extruded leftward disc herniation at C5-C6 with some superior and inferior migration resulting in significant stenosis

5

as well as some cord compression. (Tr. 158).

On June 6, 2006, Dr. Fisher reported that Plaintiff wanted to consult with his renal specialist before deciding to undergo surgery for his neck. (Tr. 166). On August 4, 2006, Dr. Fisher noted that Plaintiff had received maximum medical benefit from conservative treatment, that he had significant pain with positive Spurling's on the left with significant weakness on the left and that he was having some symptoms further down in more of a C6-7 distribution. (Tr. 312).

Dr. Keys reported on November 20, 2006, that Plaintiff was totally disabled and that he had severe chronic diarrhea causing fatigue, weakness, and weight loss, a chronic peripheral neuropathy with numbness of his feet making his balance problematic, and a C5-C6 herniated nucleus pulposus causing chronic neck and left arm pain. (Tr. 308).

Treating physician Dr. Caldwell of the Ohio State University Hospital reported on December 7, 2006, that he first treated Plaintiff two years ago for chronic diarrhea in the context of longstanding diabetes, post kidney-pancreas transplant in 1999, status post enteric conversion of pancreas transplant in 2002, that it was concluded after several studies that Plaintiff might have bacterial overgrowth as a consequence of the most recent surgery, and that since 2004, he's been treated with a series of antibiotics. (Tr. 309-10). Dr. Caldwell also reported that over the past two years Plaintiff had some apparent benefit from antibiotic use, but that in the last several months, the diarrhea had worsened, that for the past several months he had experienced nocturnal diarrhea as often as seven or eight times a night, and that his current status was one of continued diarrhea which remained under poor control. *Id.*

Plaintiff consulted with neurosurgeon Dr. Polestra on November 22, 2006, at which time Dr. Polestra noted that Plaintiff had questionably decreased biceps strength and jerks on the left

side and that he presented with a history of possible C6 or C7 radicular pattern. (Tr. 315-16). Dr. Polestra reported on December 15, 2006, that a recent MRI revealed a large disc at the C5/6 level on the left side, that it was discussed with Plaintiff that he would be a candidate for an anterior cervical fusion at C5/6, and that before any intervention, in view of Plaintiff's transplant history, he would need to obtain a Critical Care Medicine consultation. (Tr. 311).

A January 23, 2007, MRI of Plaintiff's lumbar spine revealed disc degeneration with a disc herniation slightly left of midline at the L5-S1 level impinging on the ventral aspect of the left S1 nerve root without canal stenosis. (Tr. 328).

The record contains a March 12, 2007, report from Dr. Caldwell in which he essentially opines that Plaintiff is unemployable. (Tr. 336). That report was not before Judge Padilla, but was submitted to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Padilla's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

Plaintiff essentially argues in his *pro se* Statement of Specific Errors that the Commissioner erred by rejecting Drs. Keyes' and Caldwell's opinions, by relying on the VE's testimony because it was in response to an improper hypothetical question, and by failing to consider the pain he has from his alleged neck impairment. (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of

7

treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Drs. Keyes' and Caldwell's opinions that Plaintiff is disabled, Judge

Padilla determined that those physicians' opinions were vague, indicated that Plaintiff's diarrhea was, at worst, episodic and nocturnal in nature, and overstated the frequency and degree of Plaintiff's diarrhea. (Tr. 26-27).[2]

As noted above, Dr. Keyes opined in November, 2006, that Plaintiff is totally disabled. However, Dr. Keyes provided absolutely no objective clinical findings to support his opinion. In addition, a review of Dr. Keyes' office notes reveals that they are primarily recitations of Plaintiff's subjective complaints and contain few objective clinical findings. Similarly, Dr. Caldwell's December, 2006, report contains no objective clinical findings which would support an opinion that Plaintiff is disabled.[3] Indeed, Dr. Caldwell's report appears to be a recitation of Plaintiff's subjective complaints and allegations.

In contrast to Drs. Keyes' and Caldwell's opinions, Plaintiff's records from the Ohio State University Hospital Post-Transplant facility reveals that while he had occasional complaints of diarrhea, Plaintiff has done well since his transplantation surgery and that his clinical laboratory findings were satisfactory. Further, as noted above, in September, 2006, treating nephrologist Dr. Gupta noted that Plaintiff reported that his diarrhea had resolved. Additionally, the record reveals that Plaintiff's long-term laboratory findings have been within normal limits. *See,* Tr. 124-57; 267-307. Finally, Dr. Keyes' and Dr. Caldwell's opinions are inconsistent with the reviewing physicians' opinions. *See,* Tr. 99-106; 116-23.

Under these facts, the Commissioner had an adequate basis for rejecting Drs. Keyes'

---

[2] Contrary to Plaintiff's position, Judge Padilla cited his reasons for rejecting Drs. Keyes' and Caldwell's opinions.

[3] To the extent that Plaintiff's argument concerns Dr. Caldwell's March, 2007, report, as noted above, that report is not a part of the record for purposes of substantial evidence review of Judge Padilla's decision.

and Dr. Caldwell's opinions that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by relying on the VE's testimony because it was in response to an improper hypothetical question. Plaintiff's position is that the hypothetical did not include how much time Plaintiff has to be in the bathroom when dealing with his alleged bouts of diarrhea and how many times a month he would be absent from work.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

To the extent that Plaintiff relies on Drs. Keyes' and Caldwell's opinions to support his argument that the hypothetical question Judge Padilla propounded to the VE was improper because it did not include those limitations, for the same reasons that the Commissioner had adequate bases for rejecting those opinions, he was not required to include those limitations into the hypothetical question to the VE. Moreover, to the extent that Plaintiff's argument relies on Dr. Caldwell's March, 2007, report, as noted, that report is not a part of the record for purposes of substantial evidence review of Judge Padilla's decision.

Plaintiff also argues that the hypothetical question was infirm because it did not include the amount of time he must be in the bathroom, specifically about three hours at a time. However, there is no medical evidence which supports Plaintiff's allegation of spending hours at a time in the bathroom due to diarrhea. Further, if anything, the medical evidence indicates that Plaintiff's alleged bouts of diarrhea are nocturnal in nature. Additionally, as noted above, Plaintiff reported to Dr. Gupta that his diarrhea had resolved. Under these facts, the Commissioner was not required to include in his hypothetical to the VE that Plaintiff is required to spend hours at a time in the bathroom.

Plaintiff's final challenge to the Commissioner's decision is that he failed to consider his subjective complaints of pain which is caused by his alleged cervical spine impairment. Plaintiff relies primarily on Dr. Fisher's August 4, 2006, report to support his claim of disabling pain.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints

regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In rejecting Plaintiff's subjective complaints, Judge Padilla noted that Plaintiff has had only conservative treatment for his alleged cervical spine impairment, engages in a wide variety of activities, and takes medications without side effects. (Tr. 27-28). This Court cannot say that the Commissioner erred in this regard.

Although Dr. Fisher noted that Plaintiff exhibited some positive clinical findings including a positive Spurling's test, decreased biceps and triceps strength on the left, and tenderness over the trapezius, he treated Plaintiff conservatively over time. In any event, at no time did Dr. Fisher opine that Plaintiff was disabled from his cervical spine impairment. Further, while Dr. Polestra noted that Plaintiff had some questionable findings, he reported that an MRI documented disc disease which made Plaintiff a candidate for a cervical fusion. However, there is not evidence that Plaintiff pursued any recommended surgical course of treatment. Moreover, the reviewing physicians have opined that Plaintiff is capable of performing light work in spite of his alleged impairments.

In addition, Plaintiff testified at the hearing that his wife works at the University of

Dayton, they are the parents of two-month old twins, he drives when he needs to do so, takes care of his personal needs, is able to lift 15 to 20 pounds, loads the dishwasher, sweeps the floors, helps with the laundry, goes shopping, makes the bed, goes out to eat, occasionally goes to church, visits others, reads books, exercises, and that he and his wife drove to Chicago in 2006, and stayed for three days. (Tr. 340-53).

The question, of course, is not whether there is evidence in the record which supports Plaintiff's allegation of total disability. Rather, our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff's disability ceased on March 1, 2005, and therefore he is not entitled to benefits under the Act as of the end of May, 2005, be affirmed.

May 27, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).